**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John Paul WILSON, Defendant-Appellant.**

**No. 81–1117.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 9, 1981.

Majority Opinion with Dissent Filed Jan. 14, 1982.

Opinion Withdrawn and Resubmitted July 1, 1982.

Decided Oct. 26, 1982.

See also 9 Cir., 666 F.2d 1241, 9 Cir., 681 F.2d 587.

Dennis E. Curtis, William J. Genego, Los Angeles, Cal., for defendant-appellant.

Ruth L. Cohen, Asst. U.S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Before WRIGHT and FLETCHER, Circuit Judges, and EAST,* District Judge.

EAST, District Judge:

## THE APPEAL

Wilson, appearing pro se, and in forma pauperis, appeals from a judgment of conviction and sentence for escape under 18 U.S.C. § 751(a).[1] We note jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## THE FACTS

On December 17, 1979, Wilson pleaded guilty to a misdemeanor counterfeit charge,

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. 18 U.S.C. § 751(a) states in relevant part:

   (a) Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States ... pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both . . . .

18 U.S.C. § 491(a). He received a one year sentence with six months suspended on the condition that he spend six months in a treatment-oriented institution, and was placed on three years probation.

After some delay due to another pending proceeding, Wilson was taken to the West Glenn Center, a federal halfway house. About two weeks after his arrival at the facility, Wilson signed out and failed to return. Deputy United States Marshals staked out Wilson's girlfriend's apartment in Arizona. The marshals, in possession of both a description and a photograph of Wilson, observed him leave the apartment, stopped him, and explained who they were and who they were looking for. Although one marshal testified that he was certain at that point that the suspect was in fact Wilson, they neither informed Wilson that he was under arrest, nor read him the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), at that time. Instead, the marshals asked for some identification. Wilson produced two pieces of phony identification. When the marshals indicated that unless he could better identify himself, they would have to detain him until they could determine who he was, Wilson offered the explanation that he was in the area to visit "John."

The marshals accompanied Wilson on an unsuccessful search for "John." When Wilson became "fidgety," the marshals handcuffed him and took him to his girlfriend's apartment. At the sight of Wilson in handcuffs, she began to cry, at which time the marshals advised Wilson that he was under arrest and read him the *Miranda* warnings.

At the arraignment, the Magistrate denied Wilson's request to proceed pro se and appointed counsel to represent him. Wilson then filed a notice of intent to appeal that denial. The Magistrate subsequently held a hearing on Wilson's ability to represent himself, and recommended that Wilson not be allowed to proceed pro se because he lacked the educational background to represent himself effectively. Wilson responded with an objection to that recommendation, on which the District Court did not act before trial.

On the day of trial, the court asked Wilson if he wished to represent himself. He indicated that, because he had received no access to a law library for preparation of a defense and because he was unfamiliar with trial procedure, he would not defend himself. Wilson agreed to an arrangement by which appointed counsel would examine witnesses and Wilson could ask additional questions himself or make suggestions to his counsel. Ultimately, however, Wilson's only participation at trial was at a sidebar conference in which he renewed his complaint that he had been denied access to a library to prepare his defense.

The District Court granted Wilson the opportunity to file a post-trial motion for judgment of acquittal, Fed.R.Crim.P. 29(c), asserting the defense that his sentence had expired due to accumulated "good time" credits at the time he left West Glenn Center. After the guilty verdict, the court directed that Wilson have access to a law library and other materials necessary to prepare his Rule 29(c) motion. Wilson requested and was granted more time to file the motion and was given additional access to the library. He filed no motion, but claims prison officials seized his papers, which prevented him from filing.

## DISCUSSION

### I. DENIAL OF RIGHT TO PROCEED PRO SE

Wilson contends that the Sixth and Fifth Amendments together guarantee him a right to self-representation and access to a library prior to trial to prepare his defense.

■ Federal criminal defendants have both statutory and Sixth Amendment rights to waive counsel and represent themselves when they voluntarily and intelligently so elect. 28 U.S.C. § 1654; *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Wilson contends that,

although he was ultimately given the right to participate in his trial to any extent he desired, denial until the day of trial of this right and of pretrial access to a law library effectively denied his Sixth Amendment right to proceed pro se. He argues that the Sixth Amendment right to self-representation recognized in *Faretta* implies a right of access to legal facilities and materials necessary to prepare legal arguments and documents.

We find a more narrow right to proceed pro se at trial implied from the Sixth Amendment by the Supreme Court in *Faretta*. The *Faretta* Court recognized that historically, with the brief exception of the Star Chamber, common law courts never have forced counsel upon unwilling defendants. Therefore, the "assistance of counsel" guarantees of the Sixth Amendment are not obligatory, but rather include a correlative right to reject counsel and to represent oneself.

In reaching this conclusion, the Court specifically recognized that a criminal defendant who exercises his right to reject counsel necessarily relinquishes many of the benefits associated with representation by counsel. Nowhere did the *Faretta* Court suggest that the Sixth Amendment right to self-representation implies further rights to materials, facilities, or investigative or educational resources that might aid self-representation. We decline to interpret the right to self-representation under the Sixth Amendment to include a right to conduct one's own research at government expense.

Wilson argues further that the due process clause of the Fifth Amendment, which the Supreme Court has held requires some form of "meaningful access" to the courts, *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), when combined with the Sixth Amendment right to self-representation, requires that he be afforded library access to prepare a "meaningful" defense.

The Supreme Court, in requiring meaningful access to the courts, has been careful to note that providing access to law libraries is but one of a number of constitutionally permissible means of achieving that objective. *Bounds v. Smith*, 430 U.S. at 830, 97 S.Ct. at 1499. This circuit has recently reiterated the rule. *Storseth v. Spellman*, 654 F.2d 1349 (9th Cir. 1981). Availability of legal assistance at government expense, if required, is a constitutionally permissible means of access. *Id.* When such adequate access is provided, as was here, an inmate may not reject the method provided and insist on an avenue of his or her choosing. *Id.* at 1353.

A claim similar to the one at hand was presented in *United States v. Chatman*, 584 F.2d 1358 (4th Cir. 1978). That case involved an inmate who was convicted of charges arising out of a threatening letter the inmate had sent to a judge. The inmate indicated his desire to represent himself in pretrial proceedings, but claimed at trial that he could not proceed because he had not been permitted access to the penitentiary library to prepare his defense. Apparently, the defendant had been denied access to the available library because he was in segregated confinement. At trial, the defendant's motions for a continuance and an order permitting library access were denied.

In affirming the defendant's convictions, the *Chatman* court rejected the argument that *Bounds v. Smith* required library access, saying:

> *Bounds* was concerned with the rights to equal protection and to access to the courts of prisoners who sought to invoke post-conviction relief. It held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828, 97 S.Ct. at 1498. *Bounds,* of course, has no direct application to defendant. He was accused of crime and had an absolute

right to counsel, which he validly waived; he had no present thought of pursuing post-conviction relief. But, even so, we do not read *Bounds* to give an option to the *prisoner* as to the form in which he elects to obtain legal assistance. The option rests with the government which has the obligation to provide assistance as to the form which that assistance will take. Thus, to the extent that it may be said that *Bounds* has any application to the instant case, the United States satisfied its obligation under the sixth amendment when it offered defendant the assistance of counsel which he declined. We so hold. *Cf. United States v. West,* 557 F.2d 151 (8 Cir. 1977).

584 F.2d at 1360.

We agree with the above rationale. The offer of court-appointed counsel to represent Wilson satisfied the Fifth Amendment obligation to provide meaningful access to the courts. Wilson rejected that offer of representation and insisted throughout that he be permitted to personally conduct his own research, even though the local county facility in which he was being held had no library. He never requested that his court-appointed attorney or anyone else perform research for him. Even when the District Court indicated on the day of trial that Wilson would be permitted to represent himself, he did not ask for a continuance so that he or anyone else could perform the research. Instead, Wilson chose to have his court-appointed counsel represent him.

Wilson intimated during the trial that the primary issue which he wanted to research was his claim that he was entitled to leave his place of confinement because his sentence, when properly calculated, had been completed. Although Wilson's court-appointed counsel indicated that Wilson's argument was not supported by the record, the District Court offered to permit Wilson access to a law library if he was convicted so that he could research this legal issue and file a post-trial motion for a judgment of acquittal.

After his conviction, Wilson was in fact permitted access to a law library, but he did not file the post-trial motion. He claims now, for the first time, that he was prevented from filing the motion because prison officials seized his legal papers after trial. There is no support in the record for this claim. Wilson does not contend that he informed the District Court of the seizure when he was sentenced or at any other time. The claim is therefore not properly before us, and we decline to consider it.

■ On this record, we cannot say that Wilson was deprived of all avenues of meaningful access to the court. Wilson contends, however, that his conviction must be reversed because the District Judge, the Judge's clerk and Wilson's court-appointed lawyer deliberately deprived him of his right to represent himself by entering into a plan to delay the District Court's ruling on his motion to represent himself until the day of trial.

Wilson had filed with the District Court a notice of his intent to appeal the Magistrate's initial denial of his request to represent himself. This document indicated that Wilson intended to appeal the Magistrate's ruling directly to the United States Court of Appeals for the Ninth Circuit. No such direct appeal is available; an appeal from a Magistrate's ruling must be to the District Court in the first instance. The District Judge's calendar clerk proposed in a memorandum to the Judge that Wilson's request be "placed in the file and ignored until the time of trial." The Judge wrote "O.K." in the margin beside this suggestion, and the clerk sent a copy of the memorandum to Wilson's court-appointed attorney along with a note which said "see attached so that you will know what the plan is."

The above scenario of the District Court's approved clerk's memorandum and the clerk's notation to court-appointed counsel to see the attached memorandum "so that you will know what the plan is" might well be viewed in two separate lights. Appel-

late counsel can see a diabolical conspiracy between the court, clerk and counsel to deprive Wilson of some right, while we can see a busy calendar clerk's hand in an attempt at calendar control for a very busy District Court.

While we certainly do not condone this procedure, we do not think that it requires reversal in this case as we cannot find any resulting prejudice to Wilson. Properly, the District Court should have ruled on the motion in advance of trial. However, because Wilson was not entitled to pretrial access to a law library, in light of the offer of representation by appointed counsel, the delay until trial in ruling on his motion to represent himself did not deprive him of any constitutionally protected rights. There is nothing in the record to indicate that Wilson was prevented from preparing himself as best he could, absent access to a library, for the eventuality that the District Court would ultimately grant his motion to represent himself. When the District Court granted the motion, Wilson did not ask for more time to prepare or for any aid in preparing his case. Instead, he opted to be represented by counsel. We find no constitutional violation.

## II. THE ADMISSIBILITY OF THE FALSE IDENTIFICATION AND STATEMENTS MADE TO THE U. S. MARSHALS PRIOR TO THE ARREST

Wilson next contends that he was in custody but had not been given the *Miranda* warnings at the time he gave the marshals two pieces of false identification and a false story explaining his presence at the apartment complex where he was arrested. He argues that it was, therefore, reversible error for the District Court to admit this evidence.

■ The record indicates that this objection was not properly preserved for appeal. *United States v. O'Brien,* 601 F.2d 1067 (9th Cir. 1979); *Vitello v. United States,* 425 F.2d 416, 423 (9th Cir. 1970), *cert. denied,* 400 U.S. 822, 91 S.Ct. 43, 27 L.Ed.2d 50 (1970); Fed.R.Evid. 103(a)(1). When the first marshal testified, neither Wilson nor his attorney objected to the testimony concerning Wilson's statements at the time of his arrest. Wilson's attorney did object to the testimony about the false pieces of identification on the grounds that it was "irrelevant and immaterial," but the objection was overruled. When the Government offered photocopies of the false I.D. into evidence, Wilson's attorney stated that he had no objection.

During the Government's examination of the second marshal, Wilson's attorney objected to any testimony regarding the false identification on the grounds that it was irrelevant and immaterial, and it was a violation of the defendant's rights. The objection was overruled, but the Government did not pursue the line of questioning. On cross-examination, the second marshal testified that he had both a physical description and a photograph of Wilson when he first approached him and that he was "sure" it was Wilson at that time, before Wilson was asked for any identification or had made any statements. Furthermore, the marshal responded in the negative to the defense counsel's question of whether the defendant was advised of his rights at the time he was asked to identify himself. Neither Wilson nor his counsel, however, used this testimony to renew the objection to the disputed evidence or to ask that it be stricken as violative of the defendant's Fifth Amendment rights.

■ It appears that neither Wilson nor his counsel complied with the requirement of Fed.R.Crim.P. 51 that a party make "known to the court the action which he desires the court to take or his objection to the action of the court and the grounds therefor . . . ." Rules of Evidence require that the grounds for an objection be specifically stated, and if no objection is made at the time the evidence is offered and received, its admissibility generally cannot be

challenged on appeal. *Vitello v. United States,* 425 F.2d at 423; Fed.R.Evid. 103(a)(1). Similarly, if a general objection is overruled when a specific objection should have been made, the party is precluded from asserting the proper objection on appeal. *United States v. O'Brien,* 601 F.2d 1067.

Despite the defendant's failure to preserve his objection properly for appeal, however, we will review his claim of error arising from the District Court's admission of the evidence in question if the unobjected-to error rises to the level of "plain error" as contemplated by Fed.R.Crim.P. 52(b): "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

■ A "custodial interrogation" occurs, for purposes of triggering the requirement of a *Miranda* warning, when law enforcement officers initiate questioning after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Miranda v. Arizona,* 384 U.S. at 477, 86 S.Ct. at 1629. Wilson contends that he was effectively "in custody" when he was approached by the U. S. Marshals and asked to identify himself, and that the pieces of I.D. and the statements regarding his identity were, therefore, obtained in violation of his *Miranda* rights. The Government, on the other hand, claims that the evidence was obtained during an investigatory stop which was initially noncustodial in nature. This court has held that, in the context of an investigatory stop, a mere request for written identification of a person does not necessitate a *Miranda* warning, even where the person is a suspect, so long as the questioning does not occur in a police-dominated or a compelling atmosphere. *United States v. Hickman,* 523 F.2d 323, 327 (9th Cir. 1975).

■ Whether the evidence in question was admissible at trial depends on the District Court's determination of when the de- fendant was significantly deprived of his freedom of action—that is, of whether the marshal's initial questioning of Wilson about his identity constituted a "custodial interrogation" within the meaning of *Miranda.* While the question of whether the request for identification amounted to a "custodial interrogation" is a close one, we conclude that it was not plain error for the District Court to admit the two pieces of false identification. We, therefore, decline to review Wilson's claim on appeal that the admission of the I.D. violated his Fifth Amendment rights.

■ After Wilson produced the false pieces of identification, however, the marshals advised him that unless he could better identify himself, they would have to detain him. In response, Wilson told the marshals the story of his intended visit to "John." On these facts, it appears that Wilson's freedom was significantly restricted when he made the statements about "John" and that *Miranda* warnings should have been given at that time. In light of these circumstances, we conclude that the admission of those statements clearly violated Wilson's Fifth Amendment rights and thus rises to the level of "plain error" as contemplated by Rule 52(b).

■ The standard of "plain error," however, goes only to the issue of reviewability and not to the issue of whether a reversal is warranted. Thus, an error unobjected to at trial may be so plain as to warrant review under Rule 52(b); yet the error may be harmless and, therefore, not justify a reversal. *United States v. Lopez,* 575 F.2d 681, 685 (9th Cir. 1978). In cases involving errors of constitutional dimension, we should reverse unless we are "able to declare a belief that [the error] was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *United States v. Lopez,* 575 F.2d at 685. In applying the *Chapman* standard, we must judge the magnitude of the error in light of the evi-

dence as a whole to determine the degree of prejudice to the defendant resulting from the error. *United States v. Larsen,* 596 F.2d 347, 348 (9th Cir. 1979); *United States v. Lopez,* 575 F.2d at 685.

In this case, while the statements in question appear to have been obtained in violation of *Miranda,* we conclude that their introduction at trial does not require reversal. Although the Government never made clear its purpose in eliciting the testimony concerning the false I.D. and false statements, the evidence was relevant to prove that Wilson possessed the state of mind required for conviction under the escape statute as defined by this Circuit—that his failure to remain with the limits of, or timely return to, confinement was "willful" or "blameworthy." *United States v. Jones,* 569 F.2d 499 (9th Cir.), *cert. denied,* 436 U.S. 908, 98 S.Ct. 2243, 56 L.Ed.2d 407 (1978). The fact that Wilson had willfully failed to return to the West Glenn Center was clearly established by the fact that he provided false identification, which implies that he was attempting to avoid detection by the authorities. Additionally, the Government presented evidence establishing that Wilson had signed out of the West Glenn Center and had failed to return by the designated time. In view of the substantial, independent, and credible evidence of defendant's guilt presented at trial, our review of the record as a whole convinces us that the error in admitting the defendant's statements of visitation with John and the fruitless search for John was harmless beyond a reasonable doubt.

## III. OTHER ISSUES

Wilson made several additional claims, all of which are without merit. We dispose of them briefly.

### A. *Alleged Seizure of Legal Papers*

██ Wilson claims that jail officials seized his legal papers before trial. He did not, however, make this claim to the District Court; nor does he indicate to this court what kind of legal papers were allegedly involved or in what way he may have been prejudiced. Thus, we conclude that this issue is not properly before us and we do not reach its merits.

### B. *Hearsay Claims*

██ Wilson challenges the admission of three documents. First, he argues that Exhibit 5, the photocopy of the two false pieces of identification, was inadmissible because it was not made in the ordinary course of business, but was instead made in anticipation of trial. Second, he claims that the Government's Exhibit 1, a certified copy of a Judgment and Commitment Order relating to the criminal conviction for which Wilson was incarcerated at the time of his escape, was inadmissible hearsay because it relates to a misdemeanor conviction which was not "punishable by death or imprisonment in excess of one year" as is required to render a judgment of a previous conviction admissible under Fed.R.Evid. 803(22). At trial, however, Wilson's attorney failed to object to the admission of Exhibit 5, and objected only to the marshal's return on the back of Exhibit 1, specifically stating that he had no objection to the admission of the judgment and commitment order itself. Thus, the objections which Wilson raises here appear to have been waived.[2]

██ The record indicates that Wilson's attorney did, however, raise a hearsay objection to the Government's Exhibit 2, which is a receipt for a United States prisoner (Wilson) from the marshal. This exhibit had been signed by the director of the West Glenn Center, and was identified by her at trial. Thus, the document constitutes a public record or report admissible

2. We note that, in addition, Exhibit 5 is admissible under Fed.R.Evid. 1003, which makes a duplicate admissible to the same extent as an original unless a genuine question is raised as to the authenticity of the original, or in the circumstances it would be unfair to admit the duplicate in lieu of the original. Further, Exhibit 1, certified on both sides, is thus adequately authenticated under Fed.R.Evid. 902(4) and is admissible in its entirety under the public records exception to the hearsay rule, Fed.R. Evid. 803(8).

under Fed.R.Evid. 803(8), which was adequately authenticated by the testimony of the director at trial, Fed.R.Evid. 901(a), (b)(1) and (7).

### C. *Speedy Trial Claim*

Wilson was captured by the marshals on March 28, 1980, but was not indicted for escape until May 28, 1980. At the time of his recapture, Wilson had approximately two months remaining on his sentence. He now claims that the two month delay between his arrest for escape and the indictment violated the provisions of the Speedy Trial Act establishing a thirty-day limit for filing an indictment after an arrest, 18 U.S.C. § 3161.[3]

■■■ The Government contends that the statute does not apply because Wilson was not "arrested or served with a summons in connection with" the charge of escape as is required to trigger the thirty-day limit of § 3161(b), but was instead merely returned to custody to complete his previous sentence. We agree with the Government's interpretation that § 3161 does not apply where escapees are recaptured and later indicted for the escape.[4]

### D. *Sufficiency of the Evidence*

■■■ Finally, Wilson claims that the evidence was insufficient to support his conviction in two respects. First, he claims that the Government failed to prove that he was confined in an institution designated by the Attorney General as required by § 751(a).[5] This court held in *United States v. Rosas-Garduno,* 427 F.2d 352, 353 (9th Cir. 1970), that the Government need not prove that the confinement was by the direction of the Attorney General.

Second, Wilson contends that the Government failed to prove that the escape was from a confinement based upon the conviction charged, which is a necessary element of the offense. *Bayless v. United States,* 381 F.2d 67, 73 (9th Cir. 1967). The appropriate standard of review, well-established in this Circuit, is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Bailey,* 607 F.2d 237, 243 (9th Cir. 1979), *cert. denied,* 445 U.S. 934, 100 S.Ct. 1327, 63 L.Ed.2d 769 (1980).

Here, the Government introduced a certified copy of the judgment and commitment for Wilson (Exhibit 1) which contains the District Court's recommendation that West Glenn be the place of confinement. The exhibit has an executed marshal's return on the back which states that the defendant was delivered to West Glenn Center, the institution designated by the Attorney General, with a certified copy of the judgment and commitment. We conclude that the judgment and commitment with the executed marshal's return on the back was sufficient to indicate that the confinement was by virtue of the conviction. *United States v. Rosas-Garduno,* 427 F.2d at 353.

## IV. CONCLUSION

The judgment of conviction and sentence entered on November 24, 1980 by the District Court is affirmed.

AFFIRMED.

FLETCHER, Circuit Judge, dissenting:

Because the majority misconstrues Wilson's self-representation claim and errone-

---

**3.** 18 U.S.C. § 3161 states in relevant part:

    (b) Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

**4.** The few cases which have dealt with the issue agree. *See United States v. Kripplebauer,* 463 F.Supp. 291 (E.D.Pa.1978); *United States v. Grant,* 433 F.Supp. 1113 (S.D.N.Y. 1977).

**5.** *See* note 1 *supra.*

ously concludes that he was not denied his right to self-representation, I must dissent.

Wilson wanted to represent himself; he said so unequivocally at his arraignment. Instead, after a hearing, the magistrate appointed counsel to represent Wilson because "the defendant lacks sufficient background educationally or otherwise to adequately represent himself . . . . " Wilson attempted to appeal the magistrate's denial of his request to represent himself but received no response. He filed a "Notice of Intent to Appeal Denial of Motion to Proceed in Pro-pia Persona" with the district court. Although the motion was erroneously styled an appeal to the Ninth Circuit, the court received the document long before Wilson's trial. Nothing prevented the court from informing Wilson of his error or simply overlooking the error and considering the motion as though it had been properly styled an appeal to the district court. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (technical deficiencies in pro se pleadings more readily overlooked than similar deficiencies in papers prepared by a lawyer); *Rabin v. Cohen,* 570 F.2d 864, 866 (9th Cir. 1978); *Yanow v. Weyerhaeuser Steamship Co.,* 274 F.2d 274, 283 (9th Cir. 1959) *cert. denied,* 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960) (appeals that give proper notice are generally allowed even though improperly labeled or filed in the wrong court).

The district court did neither. Instead, the district judge's clerk proposed in a memorandum to the judge that Wilson's request be "placed in the file and ignored until the time of trial." The judge approved this plan by noting "OK" in the margin of the clerk's memorandum. Subse-

quently, the clerk sent a copy of his memorandum to Wilson's appointed counsel with a note that explained, "see attached so that you will know what the plan is." As a result of this scheme, appellant's request to represent himself was not reviewed until the day of trial. By their actions, the court and Wilson's appointed counsel willfully and knowingly deprived the defendant of an opportunity to prepare his own defense in advance of trial. This extraordinary and inappropriate conduct, alone, is reason enough for reversal. Despite the majority's effort to dismiss the conduct as "a busy calendar clerk's hand in an attempt at calendar control for a very busy District Court," Maj. op. at 1273, it evinces a callous disregard for appellant's rights and constitutes an abuse of discretion on the part of the court. *See* Fed.R.Crim.P. 12(e).[1] On the day of his trial, with potential jurors already in the courtroom, the judge offered Wilson the choice of conducting his own trial, or proceeding with counsel, but with an opportunity to question witnesses himself. Wilson chose to proceed with counsel because he had not had an opportunity to prepare his own defense.

The sixth amendment and 28 U.S.C. § 1654 (1976) guarantee a defendant the right to represent himself in federal court. *Faretta v. California,* 422 U.S. 806, 813, 818, 95 S.Ct. 2525, 2530, 2532–2533, 45 L.Ed.2d 562 (1975); *Bittaker v. Enomoto,* 587 F.2d 400, 402 (9th Cir. 1978) *cert. denied,* 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386 (1979). This right cannot be denied because a defendant lacks expertise or professional capabilities. *United States v. Trapnell,* 512 F.2d 10, 11 (9th Cir. 1975). Contrary to what the majority suggests,[2] a defendant

---

1. Fed.R.Crim.P. 12(e) provides:

   Ruling on Motion.

   A motion made before trial shall be determined before trial unless the court, for good cause, orders that it be deferred for determination at the trial of the general issue or until after verdict, but no such determination shall be deferred if a party's right to appeal is adversely affected. Where factual issues are involved in determining a motion, the court shall state its essential findings on the record.

2. The majority states that while it does not "condone" the collaboration between court and defense counsel that resulted in the denial of Wilson's right to self-representation, reversal is not required because there was no "resulting prejudice" to the defendant. Maj. op. at 1273. This statement represents an erroneous interpretation of settled law. We have previously observed that requiring a showing of prejudice "could make the right to conduct one's own defense virtually unenforceable on appeal in the majority of cases." *Bittaker,* 587 F.2d at

need not show prejudice in order to prevail on a claim that his self-representation rights have been denied, *Bittaker,* 587 F.2d at 402–03; *see also United States v. Price,* 474 F.2d 1223, 1227 (9th Cir. 1973).[3]

The majority agrees that due process requires that a prisoner representing himself must have meaningful access to the court. It further correctly states that "providing access to law libraries is but one of a number of constitutionally desirable means of achieving that objective." Maj. op. at 1271. However, the majority's conclusion that "[t]he offer of court-appointed counsel to represent Wilson satisfied the Fifth Amendment obligation to provide meaningful access to the courts" is mistaken. The statement completely ignores the constitutionally significant distinction between counsel appointed to *represent* a defendant and counsel appointed to *advise* a defendant representing himself. Only the latter affords a pro se defendant a source of meaningful access to the court. The former is both logically and practically incompatible with self-representation and hence cannot afford a pro se litigant meaningful access.

The majority relies on *Bounds v. Smith,* 430 U.S. 817, 830, 97 S.Ct. 1491, 1499, 52 L.Ed.2d 72 (1977), and *Storseth v. Spellman,* 654 F.2d 1349 (9th Cir. 1981), to support the proposition that providing a prisoner with legal representation satisfies the meaningful access guarantee even when the prisoner elects to proceed pro se. This reliance is misplaced. *Bounds* dealt with the standard of access that must be provided to *all* inmates, not those who elect to exercise their right to self-representation. Moreover, the

opinion notes that "additional measures" besides legal representation may be required "to assure meaningful access to inmates able to present their own cases." 430 U.S. at 824, 97 S.Ct. at 1496. Thus, *Bounds* did not hold that giving prisoners the option of representation by a lawyer is an alternative sufficient to insure them "meaningful access." *See* 430 U.S. at 824 n. 11, 97 S.Ct. at 1496 n. 11. *Storseth* is inapposite, because it dealt with the access rights of a prisoner who insisted not on pro se representation but on representation by a specific fellow inmate. 654 F.2d at 1354.

Meaningful access for the pro se litigant involves, at a minimum, some time to prepare and some means of getting prepared for trial. Wilson had absolutely no time to prepare. Appointed counsel's preparation to conduct the trial is not the equivalent of Wilson getting *himself* prepared. Had Wilson known he could represent himself, he could have asked the appointed lawyer to get books for him, gather information, or give advice on trial procedure in aid of Wilson's defense of himself. Wilson could have prepared *himself* with this aid. Or he could have scorned the lawyer and taken whatever other means were available to him to get ready. The court could even have withdrawn the appointment of advisory counsel, provided Wilson was given reasonable time and some reasonable way of preparing himself for trial—for example, through aid of a jail-house lawyer, or through access to books from the library. Meaningful access can be by any of several routes. None was afforded here.

The majority's response to Wilson's denial of meaningful access claim is wholly inade-

---

402. Other circuits are in accord. *See, e.g., Chapman v. United States,* 553 F.2d 886, 891 (5th Cir. 1977); *United States v. Dougherty,* 473 F.2d 1113, 1127–28 (D.C.Cir.1972).

**3.** A defendant, of course, waives his right to counsel if he chooses to represent himself, and, conversely, once he has chosen to represent himself, a return to representation by counsel must be accompanied by a voluntary waiver of the defendant's self-representation rights. "The very essence of a voluntary waiver is that it be the product of a free and meaningful choice." *McKee v. Harris,* 649 F.2d 927, 931 (2d Cir. 1981), *cert. denied,* 456 U.S. 917, 102

S.Ct. 1773, 72 L.Ed.2d 177 (1982). Wilson's decision to accept appointed counsel did not involve such a meaningful choice. He was never allowed to think that he might be able to represent himself until the day of his trial. At that point he was given a choice between representing himself *unprepared* or proceeding with counsel. The court's offer to allow Wilson to have counsel but to question witnesses and comment does not cure the defect in the choice he faced. Thus, the majority does not, and could not, argue that Wilson voluntarily waived his right to represent himself.

quate. It states that, prior to trial, "[Wilson] never requested that his court appointed attorney or anyone else perform research for him." Maj. op. at 1272. Wilson's failure to make such a request is hardly surprising in view of the fact that he had been informed in no uncertain terms that he could not represent himself and prepare his own defense but instead was required to accept the representation of appointed counsel. I conclude that he did all that could be reasonably expected under the circumstances.

Finally, the majority notes:

Even when the district court indicated on the day of the trial that Wilson would be permitted to represent himself, he did not ask for a continuance so that he or anyone else could perform the research.

Maj. op. at 1272. This statement puts the shoe on the wrong foot. The result of the court's misconduct was to thwart Wilson's constitutional and statutory right to represent himself and to deny him a meaningful opportunity to exercise this right. In the light of the district court's conduct, it is unseemly for this court to fault Wilson for failing to take the proper procedural step by requesting a continuance on the day of his trial.

The majority's conclusion, "[o]n this record, we cannot say that Wilson was deprived of all avenues of meaningful access to the court," maj. op. at 1272, is simply wrong. Wilson was indeed denied meaningful access. He was given no time to prepare and was not offered advisory counsel or any other means of preparing his own defense, despite repeated and unequivocal requests to represent himself. I would reverse Wilson's conviction and remand the case to the district court.