889 F.2d 1084
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James Robert SCOTT, Jr., Plaintiff-Appellant,
v.
Sheriff Benny HEATH, Thomas V. Warren, 11th Judicial Circuit
Court Judge, Commonwealth of Virginia, John H.
Maclin, Defendants-Appellees.
 No. 88-6031.
 United States Court of Appeals, Fourth Circuit.
 Argued April 12, 1989.
Decided Oct. 27, 1989.
 
 William J. Murphy, Third-Year Law Student (Harold Jonathan Krent, Post-Convictional Assistance Project, on brief) for appellant.
 Michael Paul Falzone (Paul A. Simpson, Hirschler, Fleischer, Weinberg, Cox & Allen, Neil A.G. McPhie, Assistant Attorney General; John H. Maclin, IV, on brief) for appellee.
 Before WIDENER, MURNAGHAN, and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 James Robert Scott, Jr., filed this 42 U.S.C. Sec. 1983 action alleging that the denial of access to certain legal materials to prepare his defense in a criminal case violated the constitution. The district court, relying on United States v. Chatman, 584 F.2d 1358 (4th Cir.1978), dismissed the claims against Sheriff Benny Heath.[1] Scott appeals, arguing that Chatman should be distinguished because the defendant in Chatman was in segregated confinement. Believing Chatman is dispositive of the case, we affirm.
 
 
 2
 The Virginia state trial court in Scott's criminal case granted Scott's motion to represent himself and appointed John H. Maclin, IV, to act as Scott's standby counsel. Maclin visited Scott in the jail several times.[2] He investigated the facts by interviewing the victim and visiting the crime scene. Maclin additionally questioned the police regarding a fingerprint, reviewed lab reports relating to blood found at the scene, had open access to and reviewed the prosecutor's files, and reviewed Scott's earlier statement that was given to Georgia police. Maclin explained what he learned to Scott. He explained trial procedure to Scott, discussed strategies regarding whether Scott should testify, and informed Scott he had the right to appear at trial in civilian clothes. Maclin admits that he did not provide case law to Scott until the night before trial. Although disputed by Scott, Maclin also claims to have given Scott copies of his opening statement and closing argument and explained how a jury is selected.
 
 
 3
 Several weeks before trial, Scott moved to have access to a telephone, a law library, typewriter, paper and a Lexis terminal. On the day of trial, the trial court denied Scott's motion. Stating that he was inadequately prepared, Scott refused to take part in the trial and was convicted after he voluntarily absented himself from the courtroom.
 
 
 4
 Scott filed this Sec. 1983 action alleging a violation of his constitutional rights in that he was denied access to the legal materials. The district court ruled that the State satisfied its obligation under the sixth amendment when it offered the defendant assistance of counsel. It further ruled that any research handicaps imposed by being in custody were overcome by the assistance of standby counsel. We agree. In United States v. Chatman, 584 F.2d 1358, 1360 (4th Cir.1978), facing much the same question we held that Maryland had satisfied its sixth amendment obligation to a defendant when it offered the defendant assistance of counsel.[3] In the case at bar, Scott had assistance of counsel to overcome the limitations on his access to legal materials.[4] As we stated in Chatman, "the option rests with the government which has the obligation to provide assistance as to the form which that assistance will take." Id. Here, Virginia's choice was to provide Scott with assistance of counsel. We are of the opinion that Chatman is dispositive in this case. The judgment of the district court is accordingly
 
 
 5
 AFFIRMED.
 
 MURNAGHAN, Circuit Judge, dissenting:
 
 6
 The few cases which have squarely been presented with the problem have found elusive a satisfactory resolution. Courts have been puzzled over an accommodation between the appropriate extent of a criminal defendant's rights to conduct his own defense and the somewhat contradictory aim of a means for the defendant to do so, without a legal representative, in a meaningful manner. See, e.g., Milton v. Morris, 767 F.2d 1443 (9th Cir.1985); United States v. Wilson, 690 F.2d 1267 (9th Cir.1982), cert. denied, 464 U.S. 867 (1983).
 
 
 7
 Simply stated, how does the waiver of a criminal defendant's right to counsel[1] through an assertion of one's right to conduct one's own defense[2] affect that same person's right of meaningful access to the courts adequately to prepare the defense?[3]
 
 
 8
 According to the majority, we apparently decided the question for all purposes in United States v. Chatman, 584 F.2d 1358 (4th Cir.1978). I would agree with the majority that, in general, providing the assistance of professionally competent "standby counsel" to a criminal defendant who had asserted Faretta and had elected to represent himself or herself would normally suffice to afford due process and meaningful access to the courts under Bounds. But so to rule in the particular case presented here, as the majority has done, fails to give effect to important considerations not present in Chatman.
 
 
 9
 John H. Maclin, IV had originally been appointed as counsel to represent the defendant, James Robert Scott, Jr. Citing certain inadequacies which he perceived in the services provided by Maclin, Scott secured Maclin's discharge as his appointed defense attorney and assumed the risky role of pro se representation by one not versed in the law in a prosecution charging eighteen felonies.
 
 
 10
 The trial judge appreciated the almost certain inadequacy of Scott to represent himself. Therefore, the judge appointed standby counsel to provide assistance to Scott. In many cases, such action would satisfy both Scott's Faretta right to conduct his own defense and his Bounds right to have access to the courts in a meaningful manner.[4] Lawyers, after all, are generally presumed competent. That is especially so because in a case such as the instant one standby counsel should not control the defense and exists only to provide "adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828. Standby counsel is one of two methods, assuming unquestioned competence of standby counsel, by which the government can fulfill its affirmative obligation to provide meaningful access to the courts.[5] However, the appointment of standby counsel did not fulfill the government's obligations in the case presented here for two reasons. Apart from the inevitably and inherently suspect appointment as standby counsel of the very person found unsatisfactory for the job of counsel itself in the first place, there are more particularized reasons to question the adequacy of Maclin as standby in this specific situation.
 
 
 11
 First, Scott has alleged that Maclin interfered with Scott's control over his defense. Scott's averments clearly suggest that Maclin continued to operate as appointed defense counsel rather than as Scott's standby assistant. Maclin refused to give police reports and other discovered materials to Scott for Scott's independent evaluation despite Scott's repeated requests to him for those materials. Maclin did not even fulfill Scott's basic request that he be given paper and pen so that Scott could take notes and prepare motions. Maclin continuously attempted to convince Scott that he had foolishly elected to represent himself while Maclin continued to withhold the assistance on which Scott had a right to rely. As counsel, which role he performed initially, Maclin had rather more control. As standby counsel, however, he should have recognized that Scott was in control and acted accordingly.
 
 
 12
 Second, Maclin's assistance proved to be truly inadequate. Even he admits that he did not give Scott any copies of cases until the day before the trial and that the cases were relevant only to the lesser included offenses. It is hard indeed to force a man to trial on charges of 18 felonies and compel him to rely, for the only legal assistance he would receive, on someone he justifiably did not trust. The case is not one of no counsel. We are not confronted by repeated attempts to secure delay by last-minute, apparently unjustified, attempts to discharge appointed (or even retained) counsel who are to try the case.
 
 
 13
 Indeed, I would go so far as to suggest that at least a presumption of inadequate assistance should arise where, as here, the trial judge has appointed as standby counsel initially acceptable to the defendant one who is the very defense attorney already found, at the stage of the case where the matter arose, to be wanting by the defendant. If the scenario were to repeat itself in such a case, with the accused being dissatisfied two or three or more times with the person appointed to provide assistance, the trial court's discretion not to burden the bar by unreasonable or frivolous rejections of counsel would in all probability come into play.
 
 
 14
 But, if every dog is to be allowed one bite, how much more imperative is it, in the interest of effective assistance of counsel (and due process), that an accused such as Scott, with nonfrivolous reasons to be dissatisfied with Maclin, should be afforded at least access to legal materials or other adequate legal assistance customarily constitutionally required (and supplied) to pro se criminal defendants? Counsel other than Maclin, even only as standby, suggests itself.
 
 
 15
 On a first time basis at least, absent extraordinary circumstances not present here, one cannot be said to have effective counsel or to have been afforded due process when one has been totally restricted, having been denied even writing materials, to a person whom he has found wanting in the very legal proceeding.
 
 
 16
 I respectfully dissent from the denial to Scott of a right to proceed under 42 U.S.C. Sec. 1983, on the, to me, inadequate grounds that the unsatisfactory counsel to which he had been wholly restricted in his criminal proceeding sufficed as standby counsel. Chatman does not authorize such a course, and reliance on Chatman is misplaced in the case of Scott. There is quite a difference between Chatman's refusal from the outset to accept any appointed counsel and Scott's discharge of appointed counsel, only to be saddled with the very same lawyer, with whom he was dissatisfied, appointed as standby counsel. Chatman involved a "defendant [who] had a right to represent himself without the aid of counsel" but Scott was compelled to take as counsel, albeit on a standby basis, one he had already, with justification, found wanting. The trial judge's authority to appoint no one at all, when the defendant had indicated that that was what he wanted, hardly extended the court's authority to the point where it could appoint someone who had been found by Scott to be deficient on by no means specious grounds.
 
 
 17
 In Chatman, moreover, the portion of the opinion on which the majority relies is only dictum, the conviction having been reversed and remanded for a new trial on other grounds. The presence of an alternate juror, a thirteenth person, in the jury room during part of the jury's deliberation was held to have been plain error requiring reversal and remand of the convictions of Chatman.
 
 
 18
 To recapitulate, imagine a criminal defendant of fixed mind from the very outset that he prefers, indeed insists, that he be allowed to proceed on his own, accepting no lawyer to represent him. The show must go on. He cannot simply by refusing any and all legal representation immunize himself from the rigors of trial and possible conviction. Faretta, between the extremes of compelled representation of a recalcitrant client and an almost certainly incompetent self-representative ("Who represents himself has a fool for a client"--and lawyer substitute) has opted to let the defendant, the person most directly concerned, select which course to take. The Fourth Circuit may be excused for seizing the opportunity in Chatman, when it made no difference as to the outcome (retrial having been ordered on the separate grounds of an improperly constituted jury) to try to discourage what all lawyers and judges, as a general matter, recognize as a perilous course. The opportunity was seized, a dictum as a warning was uttered in Chatman.
 
 
 19
 But the case concerning Scott, as frequently occurs with dicta, is quite different, introducing a factor not considered by the court speaking obiter. Scott at first accepted the lawyer, Maclin, who at the outset was appointed. Scott changed his mind after encountering conduct substantial in nature, which, whether justified or not, did, in fact, with reason so terminate his confidence in Maclin that he refused to participate in any manner in his trial with Maclin his sole assistance. Most of us have the freedom to change counsel for any reason. The right to counsel for an indigent rings hollow when all it insures is the service of someone with whom the client is with apparent justification disenchanted.
 
 
 20
 Scott was denied a fair trial and, accordingly, I respectfully dissent.
 
 
 
 [1]
 The district court also dismissed the claims against Virginia Circuit Court Judge Thomas V. Warren on immunity grounds, and the claims against John H. Maclin, IV, Scott's appointed counsel, relying on Hall v. Quillen, 631 F.2d 1154 (4th Cir.1980), cert. denied, 454 U.S. 1141 (1982). On appeal, Scott does not challenge these aspects of the district court's ruling
 
 
 [2]
 Maclin claimed to have visited Scott some 8 or 9 times. The Virginia Court of Appeals believed that Maclin visited Scott at least 12 times. Scott claimed that Maclin visited him 5 times
 
 
 [3]
 Scott argues that Chatman should be limited to its facts--a defendant who is in segregated confinement. We decline to limit the holding in Chatman to such cases
 
 
 [4]
 We reject as unsupported by the evidence Scott's claim that his standby counsel was ineffective. Maclin took many actions to assist Scott, which Scott does not contest. More importantly, Scott made no showing or allegation that Maclin refused to assist Scott in any significant way. Scott was, by his own choice, representing himself. Maclin was merely his assistant
 
 
 [1]
 Gideon v. Wainwright, 372 U.S. 335 (1963)
 
 
 [2]
 Faretta v. California, 422 U.S. 806 (1975)
 
 
 [3]
 Bounds v. Smith, 430 U.S. 817 (1977)
 
 
 [4]
 See, e.g., United States v. West, 557 F.2d 151 (8th Cir.1977) (cited by Chatman ). In West, the defendant asserted Faretta and elected to proceed pro se. An attorney was appointed to assist him and the "trial court specifically instructed the attorney that while he was not to actively participate in West's defense, he was to provide assistance if and when West requested it." Id. at 152. In West, the attorney did what was requested of him by the defendant, including the provision of copies of two cases, conferences with standby counsel and an arrangement to permit the defendant to interview potential witnesses over the telephone
 
 
 [5]
 Of course, the second method of compliance is to provide access to an adequate law library, which apparently was Scott's preference. The law places the "option with the government which has the obligation to provide assistance as to the form which that assistance will take." Chatman, 584 F.2d at 1360. However, whether Scott was afforded a true choice may be questioned, as Scott has done, where the method chosen by the government (standby counsel) is inadequate. Maclin so perceived, and not unreasonably so, by Scott fits unsatisfactorily the role of adequate counsel, especially following his discharge by Scott, for far from flimsy reasons, as Scott's attorney