MICHAEL DALY HAWKINS, Circuit Judge:
Miguel Polanco appeals his conviction, following a jury trial, on two counts of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). He raises four issues on appeal. He first challenges the district court’s reliance on the doctrine of inevitable discovery as a basis for admitting the Mirandized, inculpatory statement he made following his earlier, non-Mirandized inculpatory statement. His next contention is that 18 U.S.C. § 922(g)(1) exceeds the bounds of Congress’s Commerce Clause power. Third, he argues that there was insufficient evidence to support his conviction under 18 U.S.C. § 922(g)(1). Finally, he challenges the district court’s enhancement of his sentence, under United States Sentencing Guidelines (“U.S.S.G.”) § 2K2.1(b)(5), for “use” of a firearm in connection with a felony, arguing, first, that the Supreme Court’s narrow construction of the term “use” in Bailey v. United States, — U.S. -, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), invalidates the enhancement, and, second, that there was insufficient evidence that he either used or possessed a firearm in connection with a felony.
We have jurisdiction to review Polanco’s conviction pursuant to 28 U.S.C. § 1291, and the validity of his sentence under 18 U.S.C. § 3742. We affirm his conviction and we uphold his sentence on the basis of his possession of a firearm in connection with a felony.
FACTUAL AND PROCEDURAL HISTORY
While surveilling a Los Angeles commercial neighborhood for illegal drug sales on January 6, 1995, Los Angeles Police Department (“LAPD”) officers observed defendant Miguel Polanco engaged in what appeared to be the sale of marijuana. The officers noticed that Polanco occasionally moved from the intersection of Pico Boulevard and Hoo *559 ver Street, where he was apparently selling marijuana, to a maroon Pontiac Grand Am parked in a parking lot on the northwest corner of the intersection. While surveilling the same area on January 12, 1995, the officers again observed Polanco selling marijuana. After observing several transactions by Polanco, the officers followed him to the parking lot near the intersection. There, they watched him open the trunk of the Grand Am, remove a plastic bag from under his jacket, and place it in the trunk. The bag was later found to contain several small plastic bags of marijuana and a scale. When Polanco moved around to the driver’s side of the car and opened the door, LAPD officers arrested and handcuffed him. They neither administered Miranda warnings nor questioned him. While the LAPD officers detained Polanco, federal Alcohol, Tobacco and Firearms Agent Carlos Canino, who was assisting the LAPD officers’ surveillance, searched the car. Agent Canino discovered a semi-automatic handgun in plain view, wedged between the driver’s seat and the center console of the car. The gun was loaded with six rounds of ammunition. The officers also recovered more than $5,000 in cash from the passenger side of the car.
Minutes later, while still in the custody of LAPD officers, Polanco was questioned by Agent Canino, who identified himself as a federal officer but failed to administer Miranda warnings. Agent Canino first asked Polanco his name, date of birth, and address. He then asked Polanco whether he had ever been on probation or parole, and whether he had served time in state prison. Polanco cooperated, answering both questions in the affirmative.
Shortly thereafter, Polanco was taken to LAPD headquarters at Parker Center in Los Angeles. There, Agent Canino obtained Po-lanco’s criminal record, read him his Miranda rights,[1] and questioned him further. In response to Agent Canino’s questions, Po-lanco admitted that he had been convicted of felony drug sales during the mid-1980’s, and had been incarcerated in state prison in California for eighteen months. During the interrogation, Agent Canino had a copy of Po-lanco’s criminal record and reviewed items on it with him.
On January 27, 1995, Polanco was indicted on two counts of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Before trial, Polanco moved to suppress the inculpatory statements he made to Agent Canino, alleging that Agent Canino failed to give him Miranda warnings before questioning him. In opposing Polanco’s motion to suppress, the government conceded that neither Agent Canino nor the LAPD officers had administered Miranda warnings before questioning Polanco at the scene of arrest, and stipulated that it would not introduce at trial Polanco’s arrest scene statement. It argued, however, that Polanco received proper Miranda warnings before making the inculpatory statement at Parker Center, and that this later statement was admissible pursuant to Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), because (1) both the first and second statements were made voluntarily, and (2) Polanco was informed of his Miranda rights before making the second statement but voluntarily, knowingly, and intelligently waived those rights.
At Polanco’s suppression hearing, the district court found Polanco’s first statement was made voluntarily but in violation of Miranda, and was therefore inadmissible. Although the district court found that Agent Canino had given Polanco Miranda warnings before questioning him at Parker Center, it concluded that Polanco’s Parker Center statement remained “taint[ed]” by his earlier, non-Mirandized statement, for several reasons: (1) the Parker Center interview took place soon after Polanco made the initial statement at the arrest scene; (2) it involved the same participants; and (3) the officers “ma[d]e use” of Polanco’s earlier statement to get him to confirm that statement during the Parker Center interview.
Despite concluding that Polanco’s Miran-dized Parker Center statement was *560 “taint[ed]” by his earlier, non-Mirandized statement, the district court, sua sponte, concluded that the Parker Center statement was nevertheless admissible under the inevitable discovery doctrine. The district court explained:
In my view, the doctrine of inevitable discovery does apply in this case and does salvage this information. At the scene, the officers found marijuana, and they found the gun. It is clear, certainly, by a preponderance of the evidence. And they would probably have been derelict in their duty if they hadn’t checked further at that point; so I can’t imagine that they wouldn’t have. It was inevitable that they would at that point have checked and found out every single thing about this defendant that they all discussed down at the station.
This is a status crime. A status crime was the admissions—the admission of the status, but that status was easily to be found by a whole bunch of other sources, and that status would have inevitably been clear. And for that reason, the Court finds that, under the doctrine of inevitable discovery, this information is not suppressed.
(emphasis added)
At Polanco’s March 1995 jury trial, the district court admitted Polanco’s Parker Center statement, the handgun and marijuana the officers had seized from Polanco upon arrest, and police records documenting his past felony conviction. The jury convicted Polanco of both counts of being a felon in possession in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Po-lanco to 68 months imprisonment, assigning him a four-level enhancement under U.S.S.G. § 2K2.1(b)(5) for “use” of a firearm in connection with a felony. Polanco timely appealed his conviction and sentence.
ANALYSIS
1. Admission of Polanco’s Mirandized statement following Ms prior, non-Mirandized statement
Polanco challenges the district court’s admission of his Mirandized, inculpatory statement on the basis of the inevitable discovery doctrine, asserting that the government failed to establish inevitable discovery by a preponderance of evidence. We review de novo the district court’s denial of a defendant’s motion to suppress, and we review for clear error the court’s factual findings underlying that decision. United States v. Manning, 56 F.3d 1188, 1196 (9th Cir.1995) (citation omitted).
Although the well-established general rule is that a defendant’s non-Miran-dized inculpatory statement is inadmissible at trial, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), a subsequent, Mirandized inculpatory statement is admissible under the standard set forth in Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). In Elstad, the Supreme Court held that an initial failure of law enforcement officers to administer Miranda warnings, “unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect’s ... free will,” does not, without more, “taint” subsequent statements the suspect made after receiving Miranda warnings and validly waiving his or her rights. Elstad, 470 U.S. at 309, 105 S.Ct. at 1293. To determine whether a Mirandized statement following an earlier, non-Miran-dized statement is admissible under Elstad, courts must ask whether: (1) the initial, non-Mirandized statement was voluntary and (2) the subsequent, Mirandized statement was “knowingly and voluntarily made.” Id. at 309, 105 S.Ct. at 1293. In evaluating whether the suspect’s subsequent, Mirandized statement was made knowingly and voluntarily, “the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect.” Id. at 318, 105 S.Ct. at 1298; accord United States v. Wauneka, 770 F.2d 1434, 1440 (9th Cir.1985). Voluntariness is “a totality of circumstances” inquiry, United States v. Wauneka, 842 F.2d 1083, 1087 (9th Cir.1988) (appeal after remand), and depends on such factors as “the surrounding circumstances, the combined effect of the entire course of the officer’s conduct upon the defendant, including the effect of his previously having made a confession, and the manner in *561 which the officers utilized this prior confession in obtaining a second confession.” Wauneka, 770 F.2d at 1440.
Although the government argued at the suppression hearing that Polanco’s second, Mirandized statement was admissible under Elstad, the district court failed to perform the second part of the Elstad analysis. Instead, after finding that the initial, non-Mirandized statement was voluntary and the second statement was Mirandized, the district court went on to inquire “whether the taint of the earlier evidence [had] overcome the [second] statement),]”[2] and to conclude that the Miranda violation at the scene of arrest tainted Polanco’s later statement at Parker Center. This “taint” analysis was inapposite under Elstad, however, given the district court’s finding that Polanco’s first statement was voluntary. Analysis of whether a Mirandized statement is “tainted” by a prior, non-Mirandized statement is appropriate only where the prior, non-Mirandized statement “is actually coerced[,]” but is not required where the prior statement was voluntary. Elstad, 470 U.S. at 310-11, 105 S.Ct. at 1293-94. The district court’s finding that Polanco’s initial, non-Mirandized statement was voluntary should have triggered an El-stad analysis rather than the more stringent “taint” analysis described in Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), which is appropriate only where the first statement is coerced. Elstad, 470 U.S. at 310-11, 105 S.Ct. at 1293-94.
Although the district court’s erroneous “taint” analysis examined some factors that might be germane to a determination of whether the second prong of Elstad was satisfied, the district court never made the proper Elstad inquiry: whether the second statement was “knowingly and voluntarily made.” Id. at 309, 105 S.Ct. at 1293. Instead, it concluded, sua sponte, that Polanco’s “taint[ed]” Parker Center statement was admissible under an entirely different theory: the doctrine of inevitable discovery.
This, too, was error. The doctrine of inevitable discovery allows for the admission of evidence derived from a defendant’s unconstitutional inculpatory statement, provided that the evidence would inevitably have been discovered by independent legal means. Nix v. Williams, 467 U.S. 431, 447, 104 S.Ct. 2501, 2510-11, 81 L.Ed.2d 377 (1984). The inevitable discovery doctrine does not, however, allow admission of the unconstitutional inculpatory statement itself. Nix, 467 U.S. at 437, 104 S.Ct. at 2506 (excluding statement taken in violation of Sixth Amendment right to counsel).
The inevitable discovery doctrine is an exception to the exclusionary rule, which bars the admission of evidence derived as a result of a constitutional violation because it is the “fruit” of unlawful government conduct. United States v. Ramirez-Sandoval, 872 F.2d 1392, 1395 (9th Cir.1989) (citing Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 267-68, 84 L.Ed. 307 (1939)). The inevitable discovery exception provides that evidence illegally obtained need not be excluded, provided that “the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police[.]” Nix, 467 U.S. at 447, 104 S.Ct. at 2510-11.
In this case, the sole evidence to which the inevitable discovery doctrine could have applied was the record of Polanco’s past felony conviction. Under the inevitable discovery doctrine, the record of Polanco’s past felony conviction would have been admissible, despite any prior Miranda violations, provided the government could establish by a preponderance of evidence that the officers would have discovered the conviction record through other, legal means. Id. at 444, 86 S.Ct. at 1612; see also Siripongs v. Calderon, 35 F.3d 1308, 1321 (9th Cir.1994), cert. denied, — U.S. -, 115 S.Ct. 1175, 130 L.Ed.2d 1127 (1995) (although suspect’s car containing incriminating evidence was found *562 as a result of an illegal interrogation, evidence was admissible because police could and would have obtained vehicle and owner identification information through the Department of Motor Vehicles); United States v. Martinez-Gallegos, 807 F.2d 868, 870 (9th Cir.1987) (although evidence of suspect’s illegal status was discovered as a result of a Miranda violation, that evidence was admissible because it would have been inevitably discovered by routine consultation of suspect’s immigration file); and United States v. Andrade, 784 F.2d 1431, 1433 (9th Cir.1986) (evidence derived from illegal search was admissible because it would have been inevitably discovered by routine inventory search). In addition, the government must prove that the “fact or likelihood that makes the discovery inevitable [arose] from circumstances other than those disclosed by the illegal search itself.” Ramirez-Sandoval, 872 F.2d at 1396 (citing United States v. Boatwright, 822 F.2d 862, 864-65 (9th Cir. 1987)).
We have held that “[t]he government can meet its burden by establishing that, by following routine procedures, the police would inevitably have uncovered the evidence.” Ramirez-Sandoval, 872 F.2d at 1399 (citations omitted). Polanco’s challenge to the district court’s application of the inevitable discovery doctrine is that the government failed to prove, by a preponderance of evidence, that his past felony conviction would inevitably have been discovered through routine booking procedures. We need not address this contention, since we base our decision on an altogether different error in the district court’s application of the inevitable discovery doctrine: the erroneous admission of Polanco’s confession of his past felony conviction.
We reiterate that this record does not permit us to ascertain whether the Parker Center statement could have been properly admitted under Elstad, since the district court failed to perform the second prong of the Elstad analysis. That said, the district court’s conclusion that the Parker Center statement remained “taintfed]” by the initial, non-Mirandized statement strongly suggests that the district court would have held the second statement was not “knowingly and voluntarily made” and was therefore inadmissible under Elstad.
Because this error entailed admission of a statement “taint[ed]” by the officers’ initial Miranda violation, we review for harmless error. United States v. Harrison, 34 F.3d 886, 892 (9th Cir.1994) (citing Arizona v. Fulminante, 499 U.S. 279, 310-12, 111 S.Ct. 1246, 1265-66, 113 L.Ed.2d 302 (1991)). Under a harmless error analysis, “we should reverse unless we are ‘able to declare a belief that (the error) was harmless beyond a reasonable doubt.’ ” United States v. Wilson, 690 F.2d 1267, 1275 (9th Cir.1982), cert. denied, 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983) (citing Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)). Put another way, the erroneous admission of the statement will not require reversal if “the government proves ‘beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.’” Harrison, 34 F.3d at 892 (citing Chapman, 386 U.S. at 24, 87 S.Ct. at 828). This standard requires us to “judge the magnitude of the error in light of the evidence as a whole to determine the degree of prejudice to the defendant resulting from the error.” Wilson, 690 F.2d at 1274-75 (citation omitted).
In examining the record of Polanco’s trial, we find substantial other evidence of Polanco’s prior felony conviction in addition to the inculpatory statement he made at Parker Center. At trial, the government introduced police and prison records of Polanco’s past conviction, including his arrest disposition, fingerprint card, and record of imprisonment. These materials indicated that Po-lanco was arrested for felony drug sales in 1985, pleaded guilty, and served eighteen months in a California prison. These records constituted substantial, independent, and credible evidence of Polanco’s past felony. See id. at 1275; United States v. Gonzalez-Sandoval, 894 F.2d 1043, 1047 & 1049 (9th Cir.1990). Based on this compelling other evidence of Polanco’s past felony conviction, we conclude that the district court’s admission of Polanco’s “taint[ed]” inculpatory *563 statement, though error, was harmless beyond a reasonable doubt.
2. Constitutionality of 18 U.S.C. § 922(g)(1)
Invoking the Supreme Court’s recent decision in United States v. Lopez, — U.S.-, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), Polanco challenges the validity of 18 U.S.C. § 922(g)(1) under the Commerce Clause of the Constitution. The constitutionality of a statute is a question of law reviewed de novo. United States v. Sahhar, 56 F.3d 1026, 1028 (9th Cir.), cert. denied, — U.S. -, 116 S.Ct. 400, 133 L.Ed.2d 320 (1995).
In outlining Congress’s power under the Commerce Clause, Lopez noted that the Commerce Clause empowers Congress to regulate the “channels” and the “instrumen-talities” of interstate commerce, as well as those activities that “substantially affect[] interstate commerce.” Lopez, — U.S. at -, 115 S.Ct. at 1629-30. Lopez invalidated the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q),[3] because the statute itself regulated neither channels nor instrumentalities of interstate commerce, and “ha[d] nothing to do with commerce or any sort of economic enterprise.” Id. at- -, 115 S.Ct. at 1630-31 (internal quotations omitted). Significantly, the Supreme Court noted that § 922(q) “contains no jurisdictional element which would ensure, through case-by-ease inquiry, that the firearm possession ... affects interstate commerce.” Id. at-, 115 S.Ct. at 1631.
As our post -Lopez decisions recognize, however, 18 U.S.C. § 922(g)(1) is a valid exercise of Congress’s Commerce Clause power. In United States v. Hanna, 55 F.3d 1456 (9th Cir.1995), decided shortly after Lopez, we rejected a Commerce Clause challenge to § 922(g)(1) because § 922(g)(1) contains a jurisdictional element requiring the government to prove that the defendant shipped, transported, or possessed a firearm in interstate commerce, or received a firearm that had been shipped or transported in interstate commerce. Hanna, 55 F.3d at 1462, n. 2. This jurisdictional element is a key distinction between § 922(g)(1) and § 922(q), the statute invalidated in Lopez, for it insures, on a case-by-case basis, that a defendant’s actions implicate interstate commerce to a constitutionally adequate degree. Because Hanna indisputably governs this issue, Polanco’s Commerce Clause challenge must fail.
3. Sufficiency of the evidence supporting Polanco’s conviction under 18 U.S.C. § 922(g)(1)
Polanco next contends that the government adduced insufficient evidence to establish the jurisdictional element of 18 U.S.C. § 922(g)(1). In reviewing the sufficiency of evidence underlying a conviction, the standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4] Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
In challenging the sufficiency of evidence underlying the jurisdictional element, Polanco relies on United States v. Pappadopoulos, 64 F.3d 522 (9th Cir.1995), in which we concluded that the government failed to establish a similar jurisdictional element contained in the federal arson statute, 18 U.S.C. § 844(i), and that the statute was therefore unconstitutional as applied. As we explained in Pappadopoulos, “an essential element of the crime of arson under section 844(i) is that the [destroyed] property was ‘used in’ or ‘used in any activity affecting’ interstate or foreign commerce.” Pappadopoulos, 64 F.3d at 524. Applying § 844(i)’s jurisdictional element to the facts of that case, we held that a house’s receipt of natural gas from a company that obtained only some of its gas from out of state was insufficient to establish that the house was “‘engaged in’ or ‘used in’ *564 interstate commercial activity.” Id. at 526. Moreover, destruction by arson of the house in Pappadopoulos “ha[d] only a remote and indirect effect on interstate commerce” because the house was “not used at all for commercial activity” and was “purely private.” Id. at 527-28. For these reasons, the private residence in Pappadopoulos satisfied neither the jurisdictional requirement of 18 U.S.C. § 844(i) nor the constitutional requirement that the regulated activity “ ‘substantially affect’ interstate commerce.” Id. at 526.
Here, in contrast, the government introduced persuasive evidence that Polan-co’s handgun had travelled in interstate commerce. At trial, a Nevada gun warehouse manager testified that his records indicated the handgun was manufactured in California, shipped to the Nevada gun warehouse, then shipped to a California gun dealer. Records from the Nevada warehouse indicated that a handgun of the identical model and serial number was previously in the warehouse’s inventory. In Hanna, we rejected a sufficiency of evidence challenge to a § 922(g)(1) conviction based on similar documentary evidence. Hanna, 55 F.3d at 1462.
Polanco insists that the Nevada gun warehouse records are unreliable, citing the gun warehouse manager’s concession at trial that the warehouse records had contained errors in the past. Although documentary evidence is not infallible, we must view the evidence in the light most favorable to the government. Jackson, 443 U.S. at 319, 99 S.Ct. at 2789. We therefore reject Polanco’s challenge to the sufficiency of evidence supporting his conviction.
4. The district court’s four-level enhancement of Polanco’s sentence pursuant to U.S.S.G. § 2K2.1(b)(5)
Finally, Polanco raises several challenges to his 68-month sentence, asserting that the district court erred in assigning him a four-level enhancement under U.S.S.G. § 2K2.1(b)(5) for “use” of a firearm in connection with a felony. Polanco first contends that the government failed to prove his marijuana sales constituted a felony within the meaning of U.S.S.G. § 2K2.1(b)(5). Next, he argues that the district court’s four-level enhancement for “use” of a firearm is undermined by the Supreme Court’s recent decision in Bailey v. United States, — U.S. -, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), which construed narrowly the term “use” as it appears in 18 U.S.C. § 924(c). Finally, he insists there was insufficient evidence that he either “used” or “possessed” a firearm within the meaning of U.S.S.G. § 2K2.1(b)(5). We review de novo the district court’s application of the Sentencing Guidelines, and we review for clear error the district court’s factual findings in the sentencing phase. United States v. Oliver, 60 F.3d 547, 554 (9th Cir.1995) (citation omitted).
U.S.S.G. § 2K2.1(b)(5) requires district courts to increase the base level for weapons offenses by four points if the defendant “used or possessed any firearm or ammunition in connection with another felony offense[.]” U.S.S.G. § 2K2.1(b)(5) (emphasis added). In this case, the district court assigned Polanco a four-level enhancement because it concluded that he “used” a handgun in connection with his felony drug sales.
As a preliminary matter, Polanco attacks the validity of his sentence on grounds that the government failed to prove that the sale of marijuana constitutes a “felony offense” within the meaning of U.S.S.G. § 2K2.1(b)(5). This contention is meritless. U.S.S.G. § 2K2.1(b)(5) does not require that a felony actually be charged. Application Note 7 to U.S.S.G. § 2K2.1(b)(5) defines “[flelony offense” as “any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained.” Although Polanco was not actually prosecuted for selling marijuana, it is a felony under California law to sell marijuana, and the offense is punishable by imprisonment for two, three, or four years. Cal.Health & Safety Code § 11360(a). Because Polanco’s marijuana sales constituted a state offense “punishable by imprisonment for a term exceeding one year,” his conduct satisfied the definition of “felony offense” given in Application Note 7 to U.S.S.G. § 2K2.1(b)(5). The government’s failure to prosecute Polanco for the sale of marijuana *565 simply has no bearing on the propriety of the district court’s four-level enhancement under U.S.S.G. § 2K2.1(b)(5).
Polanco’s next challenge to the district court’s four-level enhancement for “use” of a firearm requires us to reexamine our interpretation of the term “use” in light of Bailey ’s narrow interpretation of that term as it appears in 18 U.S.C. § 924(c). Bailey, — U.S. at-, 116 S.Ct. at 505. We begin by noting that U.S.S.G. § 2K2.1(b)(5) nowhere defines the terms “use” or “possess[ion][,]” nor does it define the phrase “in connection with[.]” In discerning the meaning of “used or possessed any firearm or ammunition in connection with another felony offense” under U.S.S.G. § 2K2.1(b)(5), we have looked for guidance to judicial interpretations of 18 U.S.C. § 924(c), a similarly worded criminal statute which prohibits the “use” or “carrfy]” of a firearm “during and in relation to any crime of violence or drug trafficking crime.” 18 U.S.C. § 924(c). In United States v. Routon, 25 F.3d 815 (9th Cir.1994), we held that § 924(c) was “an appropriate guide for interpreting section 2K2.1(b)(5).” Routon, 25 F.3d at 818. We explained that “ft]he texts of sections 2K2.1(b)(5) and 924(c) are very similar, and we discern no differences in the common understandings of the phrases ‘in connection with’ [under U.S.S.G. § 2K2.1(b)(5)] and ‘in relation to’ [under § 924(e)].” Id.
After we adopted this approach in Routon, however, the Supreme Court clarified its interpretation of “use” under 18 U.S.C. § 924(e). In Bailey, the Supreme Court narrowly construed the meaning of “use” under 18 U.S.C. § 924(e). That statute, the Court explained, “requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense.” Bailey, — U.S. at-, 116 S.Ct. at 505. To illustrate its new “active employment” test, the Court offered a number of examples of activities that fall within the rubric of “use” under § 924(c), including “brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire, a firearm.” Id. at-, 116 S.Ct. at 508. Activities that fall outside the category of “use,” however, include the “mere possession of a firearm by a drug offender, at or near the site of a drug crime or its proceeds or paraphenalia[;]” and the “offender's] concealment of] a gun nearby to be at the ready for an imminent confrontation.” Id. As the Court explained in Bailey, “the inert presence of a firearm, without more, is not enough to trigger § 924(e)(1).” Id.
This appeal requires us to decide whether the Supreme Court’s narrow interpretation of the term “use” under 924(c) compels us to adopt a correspondingly narrow interpretation of “use” under U.S.S.G. § 2K2.1(b)(5).[5] We conclude that it does. We base this conclusion not only the general interpretive principle we articulated in Rou-ton, but also on the narrower question settled by the Supreme Court in Bailey: the definition of “use” under 18 U.S.C. § 924(c).
The Supreme Court’s decision in Bailey has no bearing on the comparative approach we adopted in Routon, and our rationale for that approach remains solid; U.S.S.G. § 2K2.1(b)(5) closely resembles 18 U.S.C. § 924(c) in wording and structure. While § 924(e) is implicated by either the “use” or “carry” of a firearm, U.S.S.G. § 2K2.1(b)(5) is implicated by the “use” or “possession” of a firearm. Similarly, while § 924(c) requires proof that a defendant’s conduct with respect to the firearm was “in relation to” an underlying offense, U.S.S.G. § 2K2.1(b)(5) requires proof of a “connection” between the use or possession of the firearm and the underlying *566 offense. Although Bailey alters one component of this formula—the meaning of “use” under § 924(c)—that change does not affect the methodology we articulated in Routon: owing to the similarity in the language of the two statutes,'we look to § 924(c) for guidance in defining “use” under U.S.S.G. § 2K2.1 (b)(5).
Having reaffirmed our commitment to analogizing from 18 U.S.C. § 924(c) to U.S.S.G. § 2K2.1(b)(5), we now consider-whether Polanco’s conduct fit the definition of “use” outlined in Bailey. In comparing the facts of Bailey to the facts of Polanco’s conduct, we conclude there is a close similarity between the two cases. In Bailey, the Supreme Court reversed two convictions under § 924(c) for “use” of a weapon “during and in relation to” drug trafficking. Applying the “active employment” test to the two cases consolidated in Bailey, the Court found insufficient evidence of “active employment” where the first defendant kept a firearm in the locked trunk of his car, and where the second defendant had an unloaded gun in a locked trunk in her bedroom closet. Id. at -, 116 S.Ct. at 509. Similarly, in this case, Polanco’s handgun was found in his car and thus in his constructive possession, but he was not actually employing the handgun when the officers seized it. Instead, the gun was merely “presen[t]” and thus outside the rubric of “active employment” described in Bailey. Id. at-, 116 S.Ct. at 508. Given the factual parallels between Bailey and this case, we conclude that Polanco’s conduct did not rise to the level of “active employment” and therefore we cannot say that he “used” the handgun within the definition articulated by the Supreme Court in Bailey.[6]
Although the evidence presented below will not sustain Polanco’s enhancement for “use” of a firearm in connection with his felonious drug sales, we may nevertheless affirm the district court’s sentencing decision on any basis supported by the record. United States v. Alexander, 48 F.3d 1477, 1487 (9th Cir.), cert. denied, —— U.S. -, 116 S.Ct. 210, 133 L.Ed.2d 142 (1995) (citation omitted). We may therefore uphold Polan-co’s sentence if there is evidence in the record supporting an enhancement on the basis of the “possession” prong of U.S.S.G. § 2K2.1(b)(5). The question is whether, during the sentencing phase, the government proved by a preponderance of evidence that Polanco “possessed” the handgun in connection with the sale of marijuana. United States v. Restrepo, 946 F.2d 654, 661 (9th Cir.1991) (en banc), cert. denied, 503 U.S. 961, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992).
Polanco argues that the government failed to establish either “use” or “possession” under U.S.S.G. § 2K2.1(b)(5). Polanco argues, first, that there was insufficient evidence that he possessed the handgun in connection with the sale of marijuana, since he was apprehended outside the car and the gun was found inside the car. He argues, furthermore, that under Routon, “mere possession is not enough[.]” We reject Polanco’s first contention. We conclude that the gun was constructively in Polanco’s “possession” because it was found in the car he controlled. Polanco is correct, however, in his assertion that more than “mere possession” is required to establish the possession prong of U.S.S.G. § 2K2.1(b)(5).
In Routon, we explained that “the prosecution will have to make a greater showing than a defendant’s mere possession of a firearm to obtain a section 2K2.1(b)(5) enhancement.” Routon, 25 F.3d at 819. We based this principle on the language of U.S.S.G. § 2K2.1(b)(5), which requires proof of “possession] [of a] firearm or ammunition in connection with another felony offense.” The “in connection with” requirement imposes on the government a- greater showing than mere possession. Id. In Routon, we articulated the following standard for establishing the “possession” prong of U.S.S.G. § 2K2.1(b)(5): “to the extent that the government relies upon physical possession, it must show that the firearm was possessed in *567 a manner that permits an inference that it facilitated or potentially facilitated—i.e., had some potential emboldening role—in a defendant’s felonious conduct.” Id. In Routon, the defendant’s sentence was enhanced under U.S.S.G. § 2K2.1(b)(5) for “possession” of a firearm in connection with the felony theft of a car. On appeal, we concluded that “possession” of a firearm was established where the defendant was apprehended driving the stolen car, and a revolver was found in a compartment in the car’s console. Id. at 816. We explained that the defendant’s gun “emboldened him to maintain unlawful possession of the [stolen car].” Id. at 819.
Bailey does not affect our view, expressed in Routon, that a firearm falls within U.S.S.G. § 2K2.1(b)(5)’s “possession” prong when it had “some potential emboldening role in [the] defendant’s felonious conduct.” Id. The Supreme Court restricted its discussion in Bailey to the meaning of “use” within 18 U.S.C. § 924(c); Bailey therefore does not change our interpretation of the term “possession” under U.S.S.G. § 2K2.1(b)(5). We therefore continue to apply the standard for “possession” articulated in Routon: whether the firearm had “some potential emboldening role in [the] defendant’s felonious conduct.” Id.
With Routon’s “potential embol-denfment]” standard in mind, we turn to an examination of the record. Polanco’s gun was loaded with ammunition and wedged between the driver’s seat and the console of his car. Unlike the defendant in Routon, Polan-co was not apprehended while driving the car. However, on two separate occasions he was observed selling marijuana at the intersection of Pico Boulevard and Hoover Street, not far from his car, which was parked at the corner of that intersection. During the time he was selling marijuana, Polanco occasionally returned to his parked car. The search of Polanco’s ear turned up, among other things, a large amount of cash, suggesting that Po-lanco was depositing his drug sale proceeds in his car. Although- Polanco was not always within arm’s reach of his gun like the defendant in Routon, nevertheless he was selling marijuana in the vicinity of his car and thus could have availed himself of his gun at any time. The presence of the gun in Polanco’s car potentially emboldened him to undertake his illicit drug sales, since it afforded him a ready means of compelling payment or of defending the cash and drugs stored in the car. Our examination of the record leads us to conclude that the government adduced sufficient evidence to prove by a preponderance of evidence that Polanco “possessfed]” the handgun in connection with his felonious drug sales within the meaning of U.S.S.G. § 2K2.1(b)(5).
CONCLUSION
We affirm Polanco’s conviction and we uphold his sentence based on his possession of a handgun in connection with the felonious sale of marijuana.

. Although Polanco argued at his suppression hearing that he did not receive Miranda warnings until after he was questioned, the district court found that he was Mirandized at the start of the interrogation. Polanco has abandoned this argument on appeal.

. This "taint" analysis derives from Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and applies in cases where a confession is obtained subsequent to an illegal arrest that violates a defendant's Fourth Amendment rights. Under Brown, if a court determines that a confession is "tainted” by an earlier violation of the Fourth Amendment, it must exclude the confession.

. The Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q), made it a federal crime to knowingly possess a firearm at or near a school. Lopez,-U.S. at-, 115 S.Ct. at 1626.

. This standard requires the defendant to move for acquittal at the close of all evidence, a requirement Polanco satisfied below. United States v. Oliver, 60 F.3d 547, 551 (9th Cir.1995).

. This circuit has issued only two decisions interpreting U.S.S.G. § 2K2.1(b)(5) since Bailey was decided December 6, 1995. However, these decisions involved the "possession” prong of § 2K2.1(h)(5). Consequently they did not discuss the impact of Bailey on our interpretation of § 2K2.1(b)(5). See United States v. Smith, 1996 WL 56103 (9th Cir.1996) (unpublished disposition); United States v. Collins, 90 F.3d 1420 (9th Cir.1996).
Although Bailey's impact on our interpretation of “use” under U.S.S.G. § 2K2.1(b)(5) was addressed in United States v. Imes, 80 F.3d 1309 (9th Cir.1996), that opinion was subsequently withdrawn on other grounds, United States v. Imes, 91 F.3d 1210 (9th Cir.1996).
We are aware of no other circuits that have addressed the impact of Bailey on the meaning of "use” under U.S.S.G. § 2K2.1(b)(5).

. The government attempts to distinguish this case from Bailey by asserting that the defendant in Bailey was charged with "use” of a firearm, whereas Polanco's sentence was enhanced for "possession” of a firearm. The government mis-characterizes the district court's sentencing decision. Polanco's sentence was enhanced not for "possession” of a firearm, as the government contends on appeal, but instead for "use” of a firearm.